1

2

3

4

5

6

7

8              UNITED STATES DISTRICT COURT

9          FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   DESIREE McGUIRE, *et al.*,                    Case No.  2:22-cv-00125-TLN-JDP (PS)

12              Plaintiffs,

13        v.                                       FINDINGS AND RECOMMENDATIONS

14   ROSEVILLE JOINT UNION HIGH
     SCHOOL DISTRICT, *et al.*,
15
                Defendants.
16

17

18        Plaintiff Cadence DeVault, who was a high school student at the relevant time, and her

19   mother, Desiree McGuire, proceed without counsel in this action under 42 U.S.C. § 1983.  The

20   court granted defendants' first motion to dismiss, ECF No. 6, and dismissed plaintiffs' original

21   complaint without prejudice, *see* ECF Nos. 19 & 23.  Plaintiffs' first amended complaint alleges

22   that defendants violated their rights under the Fourth, Fifth, and Fourteenth Amendments, and

23   under several California state laws, by implementing and enforcing a regulation that required

24   students to wear protective face coverings at school during portions of the COVID-19 pandemic.

25   ECF No. 24.  Defendants move to dismiss the first amended complaint for failure to state a claim

26   and on the basis of qualified immunity.  ECF No. 25.  I recommend that their motion be granted

27   and that plaintiffs' first amended complaint be dismissed without leave to amend.

28

**Legal Standard**

A complaint may be dismissed for "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss for failure to state a claim, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). The plausibility standard is not akin to a "probability requirement," but it requires more than a sheer possibility that a defendant has acted unlawfully. *Iqbal*, 556 U.S. at 678.

For purposes of dismissal under Rule 12(b)(6), the court generally considers only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice, and construes all well-pleaded material factual allegations in the light most favorable to the nonmoving party. *Chubb Custom Ins. Co. v. Space Sys./Loral, Inc.*, 710 F.3d 946, 956 (9th Cir. 2013); *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012). Dismissal under Rule 12(b)(6) can be based on either: (1) lack of a cognizable legal theory, or (2) insufficient facts under a cognizable legal theory. *Chubb Custom Ins. Co.*, 710 F.3d at 956. Dismissal also is appropriate if the complaint alleges a fact that necessarily defeats the claim. *Franklin v. Murphy*, 745 F.2d 1221, 1228-29 (9th Cir. 1984).

**Background**

The factual allegations in the first amended complaint are substantially similar to those in the original complaint. Allegations essential to the adjudication of defendants' motion to dismiss are set out herein; additional details are provided in the court's September 7, 2022 findings and recommendations. ECF No. 19.

During the events in question, plaintiff DeVault was a student at Antelope High School, a school in the Roseville Joint Union High School District ("RJUHSD"); plaintiff McGuire is her mother. ECF No. 24 at 10. Defendants include RJUHSD, several of its board members, and at least two school administrators. *Id.* at 10-12. On March 13, 2020, the RJUHSD school board

2

suspended on-campus activities due to the COVID-19 pandemic, and on January 5, 2021, it resumed on-campus classes with a requirement that students wear protective face masks as a condition of on-campus attendance. *Id.* at 14-15. The mask requirement was implemented pursuant to a directive of the California Department of Public Health ("CDPH") that applied to every school in California. *See* ECF No. 25-2 at 44.[1] The directive provided that students were exempt from the requirement if they had "a medical or mental health condition or disability that would impede them from properly wearing or handling a face covering." *Id.*

On at least two occasions in January 2021, DeVault's teachers or her assistant principal, defendant Gayle, instructed her to wear a mask that complied with the district's mask policy. ECF No. 24 at 15-17. In one instance, DeVault explained to her teacher that the mask "made her feel anxious, dizzy to the point of passing out, and . . . trapped, as if a panic attack were about to start." *Id.* at 15. After the second incident, Gayle emailed McGuire to explain that DeVault was required to wear a compliant mask to attend on-campus school. *Id.* at 16-17, 294. McGuire responded on January 19, informing Gayle that DeVault "will wear the mask [she] feel[s] most comfortable wearing" and providing reports that purported to show "the ineffectiveness of masks and the health concerns related to prolonged wearing of masks." *Id.* at 17, 296. The following morning, Gayle responded to McGuire and informed her that DeVault would be required to attend school remotely if she did not comply with the on-campus mask policy. *Id.* at 17.

Shortly thereafter, Gayle entered DeVault's classroom, "smacked his hand on DeVault's desk, and said, 'I need you to come with me.'" *Id.* In the assistant principal's office, defendant DeLorge—Gayle's secretary—confiscated DeVault's phone and instructed her to complete a form entitled "Sworn Statement of Witness in Lieu of Testimony at Hearing"; DeLorge asked DeVault to explain why she refused to wear an appropriate mask. *Id.* at 18. DeLorge allegedly

---

[1] Defendants ask the court to take judicial notice of the CDPH "COVID-19 and Reopening In-Person Instruction Framework & Public Health Guidance for K-12 Schools in California, 2020-2021 School Year." ECF No. 25-2 at 2-3, 28-78. Because this document is a public record and a government document available from a reliable source, and because plaintiffs do not contest its accuracy, it is subject to judicial notice. *See Givens v. Newsom*, Case No. 2:20-cv-00852-JAM-CKD, 2021 WL 4553643, *1 (E.D. Cal. Oct. 5, 2021) (taking judicial notice of CDPH guidance documents related to COVID-19).

refused DeVault's request to contact McGuire before completing the statement. *Id.* Unlike in the original complaint, the first amended complaint alleges that Gayle did not "confirm[] mask compliance" before bringing DeVault to his office, and it alleges that DeVault "was in mask compliance" at the time. *Id.* On the witness statement form, DeVault wrote, "I feel I should have the right to wear a mask I feel safe in, and I don't feel safe wearing a normal mask." *Id.* at 19 & 302. Gayle subsequently called McGuire to inform her that "he would be removing [DeVault] from in-person learning and requiring [her] to work from home until she complied with the mask mandate, and [that McGuire] would need to come pick [DeVault] up from school immediately." *Id.* at 19-21. Thereafter, DeLorge returned DeVault's phone and instructed her to wait outside for McGuire. *Id.* at 21. After McGuire had picked up DeVault, Gayle sent emails to McGuire and to DeVault's teachers informing them that DeVault would "be working from home for the rest of the semester, or until she decides to comply with the CDPH guidelines." *Id.* at 22, 305-07.

Plaintiffs supply an affidavit by "an expert in the field of Industrial Hygiene" that purports to dispute the efficacy of face coverings as a means of preventing the transmission of COVID-19. *Id.* at 123-28. Plaintiffs also claim that "the mask is an experimental requirement violating the Nuremberg Code . . . , requiring full disclosure of risks and benefits of wearing the mask." *Id.* at 17. They neither allege that DeVault has a documented medical condition that would exempt her from the school mask requirement nor that they gave defendants documentation of any such condition.

## Discussion

### A.      Claims Against RJUHSD and Official-Capacity Defendants

Plaintiffs' federal claims are brought under 42 U.S.C. § 1983 against the RJUHSD and against all defendants in both their official and personal capacities. *See* ECF No. 24 at 10-11, 84-92. The RJUHSD and its board of trustees are state agencies immune from suits for damages under the Eleventh Amendment. *Belanger v. Madera Unified Sch. Dist.*, 963 F.2d 248, 254 (9th Cir. 1992) (holding that damages claims under § 1983 against a California public school district are barred by the Eleventh Amendment). Because the individual defendants are RJUHSD school board members or school administrators, they are immune from suits for damages in their official

4

1    capacities.  *See Pena v. Gardner*, 976 F.2d 469, 472 (9th Cir. 1992) ("[T]he Eleventh

2    Amendment[] bar[s] . . . claims in federal court against the state officials in their *official*

3    capacities."); *see also Everett H. v. Dry Creek Joint Elementary Sch. Dist.*, 5 F. Supp. 3d 1167,

4    1179 (E.D. Cal. 2014) (holding that damages claims against public school district administrators

5    are barred by Eleventh Amendment immunity).

6         Such claims cannot be saved by plaintiffs' requests for prospective relief because

7    plaintiffs fail to allege that they remain subject to the complained-of policies.  The first amended

8    complaint does not allege that DeVault remains a student within the RJUHSD, and it provides

9    several indications that she is no longer a student: it alleges that the 2021-2022 school year was

10   her senior year of high school, that she is now "an adult individual who resides within the

11   RJUHSD," and that the mask policy caused her to miss both her graduation and the "2022 Senior

12   Ball."  ECF No. 24 at 10, 24-25, 51, 75.  The first amended complaint also fails to allege that the

13   mask policy remains in effect, and plaintiffs acknowledge in their opposition that the mask policy

14   was suspended in February 2022.  ECF No. 32 at 9.[2]

15        Plaintiffs argue that their claims for prospective relief are not moot because of the

16   voluntary cessation doctrine.  *Id.* (citing *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013))

17   (holding that "a defendant cannot automatically moot a case simply by ending its [allegedly]

18   unlawful conduct once sued" because the defendant could simply "pick up where he left off").

19   This argument has been rejected by the Ninth Circuit in a similar context.  *See Brach v. Newsom*,

20   38 F.4th 6, 9 (9th Cir. 2022) (holding that "the mere possibility that California might again

21   suspend in-person instruction is too remote" for injunctive relief claims to avoid being dismissed

22   as moot).  Moreover, the voluntary cessation doctrine does not remedy the fact that plaintiffs are

23   no longer personally subject to the district's mask policies.  *See Lighthouse Fellowship Church v.*

24   *Northam*, 20 F.4th 157, 162-64 (4th Cir. 2021) (holding that the voluntary cessation doctrine did

25   not rescue an otherwise moot challenge to a COVID-19 pandemic policy).  Plaintiffs' equitable

26

27        [2] Defendants ask the court to take judicial notice of (1) an RJUHSD enrollment record
     purporting to show that plaintiff DeVault has not been enrolled within the district since May 27,
     2021, and (2) a February 2022 update to the RJUHSD official mask policy.  ECF No. 25-2 at 1-3,
28   80, 90.  Neither request need be addressed at this time and so both are denied as unnecessary.

relief claims are therefore moot, and their official-capacity claims are barred by the Eleventh

Amendment.  Plaintiffs can proceed only on their claims for damages against the individual

defendants in their personal capacities.

### B.    Federal Claims Against Defendants in their Personal Capacities

Although the factual allegations in plaintiffs' first amended complaint are substantially the

same as in their original complaint, the legal theories underlying their claims have changed.  The

first amended complaint alleges that defendants violated plaintiffs' due process rights under the

Fourteenth Amendment insofar as they (1) deprived plaintiffs of their "fundamental right[s] to an

in-person, public education and to an education in a safe and healthy environment," ECF No. 24

at 85; (2) interfered with their right to familial association, *id.* at 105-10; and (3) placed DeVault

in danger by requiring her to wear a mask, *id.* at 110-14.  The first amended complaint also

alleges that defendants DeLorge and Gayle violated DeVault's Fourth Amendment right against

unreasonable seizures by confiscating her phone.  *Id.* at 114-15.  It does not appear to renew

plaintiffs' procedural due process claims.[3]

### 1.   Substantive Due Process

Plaintiffs allege that defendants' implementation of the mask requirement at Antelope

High School violated their substantive due process rights under the Fourteenth Amendment.  ECF

No. 24 at 84.[4]  The "substantive component" of the "Fourteenth Amendment's guarantee of 'due

---

[3] Plaintiffs' 348-page complaint is poorly organized and in places difficult to understand. To the extent plaintiffs attempt to renew procedural due process claims stemming from the lack of an in-person hearing or the lack of notice before implementing the mask mandate, such claims are insufficient for the reasons explained in the September 7, 2022 findings and recommendations. ECF No. 19.  As noted there, courts have widely rejected procedural due process challenges to school mask policies like the one at issue.  *See Branch-Noto v. Sisolak*, 576 F. Supp. 3d 790, 803 (D. Nev. 2021); *Gunter v. N. Wasco Cnty. Sch. Dist. Bd. of Educ.*, 577 F. Supp. 3d 1141, 1160-61 (D. Or. 2021); *cf. Jacobs v. Clark Cnty. Sch. Dist.*, 526 F.3d 419, 441 (9th Cir. 2008) ("[A]lthough it might be preferable for schools to seek parental approval before instituting controversial school policies, and it might be a violation of state law for schools not to do so if a local statute or regulation so dictates, the Due Process Clause in no way requires this.").

[4] Although the first amended complaint also appears to renew plaintiffs' claims under the Fifth Amendment Due Process clause, *see* ECF No. 24 at 84, plaintiffs concede in their opposition that the Fifth Amendment Due Process clause does not apply to state and local officials, *see* ECF No. 32 at 10-11; *see Bingue v. Prunchak*, 512 F.3d 1169, 1174 (9th Cir. 2008) ("[T]he Fifth Amendment's due process clause only applies to the federal government.").

1    process of law' . . . forbids the government to infringe certain 'fundamental' liberty interests at

2    all, no matter what process is provided, unless the infringement is narrowly tailored to serve a

3    compelling state interest." *Reno v. Flores*, 507 U.S. 292, 302 (1993).  Thus, a "[s]ubstantive due

4    process analysis must begin with a careful description of the asserted right." *Id.*

5           As in the prior complaint, plaintiffs contend that DeVault possesses a "fundamental right

6    to an in-person, public education and to an education in a safe and healthy environment."  ECF

7    No. 24 at 85.  They allege that defendants infringed that right by requiring DeVault to wear a

8    mask that made it harder to breathe.  *Id.* at 86 & 88.  They suggest that this right extends to

9    McGuire because DeVault's suspension caused McGuire monetary and emotional harm.  *Id.* at

10   89-90.

11          Neither plaintiff possesses such a right under federal law.  "Public education is not a

12   'right' granted to individuals by the Constitution."  *Plyler v. Doe*, 457 U.S. 202, 221 (1982); *see*

13   *also Payne v. Peninsula Sch. Dist.*, 653 F.3d 863, 880 (9th Cir. 2011) (en banc) (noting that there

14   is "no enforceable federal constitutional right to a public education").  "While parents may have a

15   fundamental right to decide *whether* to send their child to a public school, they do not have a

16   fundamental right generally to direct *how* a public school teaches their child."  *Fields v. Palmdale*

17   *Sch. Dist.*, 427 F.3d 1197, 1207 (9th Cir. 2005) (quoting *Blau v. Fort Thomas Pub. Sch. Dist.*, 401

18   F.3d 381, 395-96 (6th Cir. 2005)).  "Due process does not give parents the right to interfere with a

19   public school's operations because issues such as school discipline, the content of examinations,

20   and dress code are issues of public education generally committed to the control of state and local

21   authorities."  *McNeil v. Sherwood Sch. Dist. 88J*, 918 F.3d 700, 711 (9th Cir. 2019) (internal

22   citations and quotation marks omitted).

23          In light of these precedents, courts have consistently held that neither parents nor students

24   possess a fundamental right against the various actions taken by states and public-school

25   administrators to mitigate the spread of COVID-19, such as temporary remote-learning

26   arrangements and mask requirements for in-person learning.  *See Branch-Noto v. Sisolak*, 576 F.

27   _____

28   Therefore, I will construe such claims as alleging Fourteenth Amendment violations.

1   Supp. 3d 790, 799 (D. Nev. 2021) ("[T]he right to parent as one sees fit does not entitle parents to

2   undermine local public-health efforts during a global pandemic by refusing to have their children

3   comply with a school mask requirement, particularly when they've affirmatively chosen that

4   option over the maskless, distance-learning alternative that [the district] also made available.");

5   *Gunter v. N. Wasco Cnty. Sch. Dist. Bd. of Educ.*, 577 F. Supp. 3d 1141, 1155-56 (D. Or. 2021);

6   *Guilfoyle v. Beutner*, No. 2:21-CV-05009-VAP (MRWx), 2021 WL 4594780, at \*17 n.8 (C.D.

7   Cal. Sept. 14, 2021).[5]

8        Since plaintiffs fail to allege a violation of a fundamental right, the RJUHSD mask

9   requirement is analyzed under rational basis review.  *See Gunter*, 577 F. Supp. 3d at 1155-56.

10   Under rational basis review, courts ask only whether the defendants' action "bears a rational

11   relation to a legitimate government objective."  *Kadrmas v. Dickinson Pub. Schs.*, 487 U.S. 450,

12   461-62 (1988).  Laws reviewed under this standard, including rules passed by a school board, are

13   presumed valid.  *Harrah Indep. Sch. Dist. v. Martin*, 440 U.S. 194, 198 (1979).

14        Federal courts have consistently held that both distance learning and mask requirements

15   implemented in response to the COVID-19 pandemic satisfy this deferential standard, particularly

16   where, as here, the requirements were implemented pursuant to public health directives of state

17   and national authorities.  *See Guilfoyle*, 2021 WL 4594780, at \*14 (finding "a legitimate interest

18   in abating the COVID-19 pandemic" and that "LAUSD's COVID-19 mitigation measures are

19   related rationally to that legitimate interest because they are consistent with local, state, and

20   national public health orders"); *Branch-Noto*, 576 F. Supp. 3d at 802 ("[I]t cannot be said that the

21   masking policies are not rationally related to the legitimate government interest of slowing the

22   spread of COVID-19.").  Plaintiffs' assertions that masks are ineffective against the virus and

23   cause harmful side effects, including by inhibiting breathing, are insufficient to demonstrate that

24   defendants lacked a rational basis for the requirement's implementation.  *See Forbes v. Cnty. of*

25   *San Diego*, No. 20-CV-00998-BAS-JLB, 2021 WL 843175, at \*5 (S.D. Cal. Mar. 4, 2021)

26        [5] Plaintiffs recast their allegations that defendants violated "the Nuremberg Code" as a

27   violation of California state law, rather than—as in their original complaint—a violation of
    substantive due process.  *See* ECF No. 24 at 17 & 77.  Plaintiffs' state law claims are addressed

28   *infra*, part D.

(explaining that the plaintiff's "contentions disputing the scientific basis for the Mask Rules are simply not enough to state a plausible clam that the rules are not rationally related to a legitimate government interest").

### 2. Fourteenth Amendment Right to Familial Association

Plaintiffs allege that defendants violated their Fourteenth Amendment right to familial association by refusing to grant DeVault's request to speak with McGuire before completing the witness statement form on January 20, 2021.  ECF No. 24 at 105-110 (citing, *inter alia*, *Smith v. City of Fontana*, 818 F.2d 1411, 1418 (9th Cir. 1987)).  The Ninth Circuit has held that "parents can challenge under section 1983 a state's severance of a parent-child relationship as interfering with their liberty interests in the companionship and society of their children."  *Smith*, 818 F.2d at 1418; *see also Wallis v. Spencer*, 202 F.3d 1126, 1137 n.8 (9th Cir. 2000); *Mabe v. San Bernardino Cnty., Dep't of Pub. Soc. Servs*., 237 F.3d 1101, 1106 (9th Cir. 2001).  Those precedents "establish procedural guarantees for 'intruding on a parent's custody of her child,'" such as when Child Protective Services or the police forcibly remove children from a parent's custody.  *Branch-Noto*, 576 F. Supp. 3d at 802 (quoting *Mabe*, 237 F.3d at 1106).  Where, as here, a minor is voluntarily placed in the custody of the school, the familial association doctrine "ha[s] no application."  *Id.* (dismissing a claim alleging that the enforcement of a school's mask mandate interfered with the plaintiff's right to familial association).  Plaintiffs' allegations "do not come close to the parent-child separation scenarios found to violate this narrow right."  *Id.* at 803.

### 3. State-Created Danger

Plaintiffs also allege that defendants deprived plaintiff DeVault of her Fourteenth Amendment rights under the "state-created danger" doctrine.  ECF No. 24 at 110.  "Under the state-created danger doctrine, a state actor can be held liable for failing to protect a person's interest in his personal security or bodily integrity when the state actor affirmatively and with deliberate indifference placed that person in danger."  *Pauluk v. Savage*, 836 F.3d 1117, 1122 (9th Cir. 2016).  To succeed on a state-created danger claim, plaintiffs must show that defendants "recognize[d] an unreasonable risk and actually intend[ed] to expose the plaintiff to such risks

1  without regard to the consequences to the plaintiff." *Patel v. Kent Sch. Dist.*, 648 F.3d 965, 975
2  (9th Cir. 2011).

3         Plaintiffs fail to explain how the mask requirement exposed DeVault to a serious risk of
4  harm.  The only harm alleged is that wearing a mask caused DeVault to "feel stress and anxiety
5  by restricting her ability to breathe."  *Id.* at 113.  Plaintiffs neither allege that the face masks
6  caused significant harm to any student or employee of the RJUHSD, nor that DeVault had a
7  documented medical condition that would prevent her from wearing a face covering.  Even
8  accepting as true the allegation that wearing a protective face mask impaired DeVault's ability to
9  breathe, defendants did not require DeVault to wear a mask at all; rather, they gave her the choice
10  of whether to wear a mask or attend school remotely.  *Id*. at 23 (providing that DeVault was
11  required to work "from home for the rest of the semester, or until she decides to comply with
12  CDPH guidelines").

13         As explained *supra*, pages 8-9, defendants implemented the mask mandate pursuant to a
14  CDPH directive that is rationally related to a legitimate interest in abating the COVID-19
15  pandemic and, consequently, to protecting students from the health consequences of the COVID-
16  19 virus.  *See* ECF No. 25-2 at 31 (explaining that the CDPH directive "is rooted in the scientific
17  evidence available to date and supports twin goals: safe and successful in-person instruction").[6]
18  Rather than showing that defendants intended to subject DeVault to a substantial risk of harm, the
19  allegations "support[] the opposite conclusion"—that defendants intended to protect students and
20  staff within RJUHSD from the risks associated with COVID-19.  *Am.'s Frontline Doctors v.*
21  *Wilcox*, EDCV 21-1243 JGB (KKx), 2021 WL 4546923, at *6 (C.D. Cal. July 30, 2021)
22  (rejecting a state-created danger challenge to a COVID-19 vaccine mandate).

23  _____

24      [6] Indeed, the state-created danger doctrine has more commonly been applied to challenge
   state activities that increased the risk of contracting COVID-19.  *See Santa Cruz Homeless Union*
25  *v. Bernal*, 514 F. Supp. 3d 1136, 1143 (N.D. Cal. 2021) (holding that the plaintiffs were "likely to
   succeed in demonstrating that the City's dispersal of the homeless persons during the current dire
26  situation of the COVID-19 pandemic puts them at greater risk for COVID-19 than if they remain
   in the Encampment"); *Castillo v. Barr*, 449 F. Supp. 3d 915, 922 (C.D. Cal. 2020) (enjoining the
27  defendants to release the plaintiffs from immigration detention due to the risk of contracting
   COVID-19 in the absence of adequate protective measures, such as social distancing and
28  individual hygienic facilities).

### 4.   Fourth Amendment Right Against Unreasonable Seizures

Plaintiffs allege that defendants DeLorge and Gayle violated plaintiff DeVault's Fourth Amendment rights by confiscating her cell phone without probable cause.  ECF No. 24 at 114-15.

Although the Fourth Amendment applies to searches and seizures conducted by school authorities, "[a] student's privacy interest is limited in a public school environment where the State is responsible for maintaining discipline, health, and safety."  *Bd. of Educ. of Indep. Sch. Dist. No. 92 of Pottawatomie Cnty. v. Earls*, 536 U.S. 822, 830 (2002); *see also Hunter v. Bd. of Trustees of Oroville Union Sch. Dist.*, 156 F.3d 1237, 1237 (9th Cir. 1998) ("The standard for searches and seizures in the public school context is relaxed.").  In the school context, the Fourth Amendment does not always require individualized suspicion or probable cause; rather, a school official's actions must be "reasonably related to the objectives of the search [or seizure] and not excessively intrusive in light of the age and sex of the student and the nature of the infraction." *New Jersey v. T.L.O.*, 469 U.S. 325, 342 (1985); *see also Doe ex rel. Doe v. Hawaii Dep't. of Educ.*, 334 F.3d 906, 909 (9th Cir. 2003) ("[T]he reasonableness of the seizure must be considered in light of the educational objectives [the official] was trying to achieve.").

Defendants argue both that DeLorge did not seize DeVault's phone within the meaning of the Fourth Amendment and—if a seizure occurred—that DeLorge acted reasonably.  ECF No. 25-1 at 16 (citing *Burlison v. Springfield Pub. Schools*, 708 F.3d 1034, 1039 (8th Cir. 2013) ("Not every governmental interference with a person's property constitutes a seizure of that property under the Constitution.") (internal marks and citations omitted)).  "A 'seizure' of property occurs where there is some meaningful interference with an individual's possessory interests in that property." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984).

According to the first amended complaint, defendant DeLorge confiscated DeVault's cell phone for approximately thirty minutes—from 9:00 a.m., when DeLorge escorted DeVault to Gayle's office, until 9:30 a.m., when she sent DeVault home with McGuire.  *See* ECF No. 24 at 17-21.  Given that DeLorge deprived DeVault of possession and use of her phone, if only briefly, she likely effected a seizure.  However, it is unnecessary to decide that question because plaintiffs' allegations fail to show that any such seizure contravened the Fourth Amendment.

1    Defendants DeLorge and Gayle had a reasonable interest in maintaining order as they spoke with

2    DeVault's mother on the phone and obtained a written statement from DeVault. *Id.* The seizure

3    was not especially intrusive: plaintiffs do not allege that defendants searched, damaged, or

4    refused to return the phone upon releasing DeVault to McGuire. *See id.*; *T.L.O.*, 469 U.S. at 342

5    (weighing the intrusiveness of the search or seizure against the officials' objectives).[7]  In the

6    absence of allegations that defendants acted unreasonably, the first amended complaint fails to

7    state a claim under the Fourth Amendment. *Cf. Smith v. McGlothlin*, 119 F.3d 786, 788 (9th Cir.

8    1997) ("[A] student is required to be on school premises, subject to the direction of the school

9    authorities, during the course of the schoolday.").[8]

10       **C.    Federal Claims Against Defendants in their Supervisory Capacities**

11              Plaintiffs also allege that certain defendants are liable for the above-discussed federal-law

12    violations in their supervisory capacities—both under a *respondeat superior* theory and for

13    failures to supervise and train. ECF No. 24 at 96-104. "There is no *respondeat superior* liability

14    under § 1983." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989)). "[A] plaintiff may state a

15    claim against a supervisor for deliberate indifference based upon the supervisor's knowledge of

16    and acquiescence in unconstitutional conduct by his or her subordinates." *Starr v. Baca*, 652 F.3d

17    1202, 1207 (9th Cir. 2011); *see also Flores v. County of Los Angeles*, 758 F.3d 1154, 1159 (9th

18    Cir. 2014) (holding that a claim for failure to train requires allegations showing that a supervisor

19    "was deliberately indifferent to the need to the need to train subordinates, and the lack of training

20    actually caused [a] constitutional harm or deprivation of rights"). Because the first amended

21    complaint fails to sufficiently allege any violation of plaintiffs' constitutional rights, *see supra*,

22

23              [7] The only apparent consequence of the alleged seizure was that DeVault could not call
      McGuire herself. The first amended complaint also suggests that by demanding a witness
24    statement without allowing DeVault to contact McGuire, DeLorge infringed DeVault's Fifth
      Amendment right against self-incrimination. *See* ECF No. 24 at 19. However, "a violation of the
25    constitutional right against self-incrimination occurs only if one has been compelled to be a
      witness against [her]self in a criminal case," *Chavez v. Martinez*, 538 U.S. 760, 770 (2003), and
26    plaintiffs do not allege that DeVault has been subjected to criminal prosecution.

27              [8] Because plaintiffs fail to state a claim under the Fourth, Fifth, or Fourteenth
      Amendments, I decline to address defendants' arguments that they are entitled to qualified
28    immunity.

                                                          12

1    page 6-12, it also fails to state a claim for failure to supervise or train.

2          **D.**    **State Law Claims**

3          Plaintiffs' nine remaining claims arise under state law.  *See* ECF No. 24 at 23-81.  The

4    complaint does not establish diversity of citizenship, and plaintiffs have not alleged a cognizable

5    federal claim.  *See* 28 U.S.C. §§ 1331, 1332; *see also Bautista v. Pan Am. World Airlines, Inc.*,

6    828 F.2d 546, 552 (9th Cir. 1987) (holding that the complaint must specifically allege diverse

7    citizenship of all parties to invoke diversity jurisdiction).  Consequently, there is no reason to

8    exercise supplemental jurisdiction over plaintiffs' state law claims, and those claims should also

9    be dismissed.  *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual

10   case in which all federal-law claims are eliminated before trial, the balance of factors to be

11   considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and

12   comity—will point toward declining to exercise jurisdiction over the remaining state-law

13   claims."); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Needless decisions

14   of state law should be avoided both as a matter of comity and to promote justice between the

15   parties, by procuring for them a surer-footed reading of the applicable law.").  I recommend the

16   court decline to exercise supplemental jurisdiction over plaintiffs' state claims.

17                                                     **Conclusion**

18         I recommend that the first amended complaint be dismissed without leave to

19   amend.  Plaintiffs dropped several claims previously found insufficient, but otherwise failed to

20   improve their allegations.  Neither their first amended compliant nor their opposition to

21   defendants' motion to dismiss provide reasons to believe that further amendment could cure the

22   deficiencies identified herein.  *See California Architectural Bldg. Prod. v. Franciscan Ceramics*,

23   818 F.2d 1466, 1472 (9th Cir. 1988) ("Valid reasons for denying leave to amend include undue

24   delay, bad faith, prejudice, and futility."); *cf. Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000)

25   (en banc) (holding that district courts must afford pro se litigants an opportunity to amend when it

26   appears possible that they can correct the deficiencies in their complaints).

27         Accordingly, it is hereby RECOMMENDED that:

28         1.  Defendants' motion to dismiss, ECF No. 25, be granted.

2.  Plaintiffs' first amended complaint, ECF No. 24, be dismissed without leave to amend.

3.  The Clerk of Court be directed to close the case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:    June 5, 2023

JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE

14